**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 26-cv-1264-WJM

MUKESH KUMAR,

     Petitioner,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary
of Department of Homeland Security, *et al*.

     Respondents.

---

## AMENDED ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS

---

Before the Court is Petitioner Mukesh Kumar's Petition for Writ of Habeas Corpus, brought pursuant to 28 U.S.C. § 2241 ("Petition") (ECF No. 1), and Motion for Temporary Restraining Order and/or Preliminary Injunction ("Motion") (ECF No. 2). Respondents Markwayne Mullin, in his official capacity as Secretary of the Department of Homeland Security ("DHS"); Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"); Todd Blanche,[1] in his official capacity as Acting United States Attorney General; and Kelei Walker, in her official capacity as Denver Field Office Director for ICE (collectively, "Respondents" or "the Government"), filed a response. (ECF No. 10.) At the Court's direction, Kumar filed a reply. (ECF No. 13.)

For the following reasons, the Petition is granted and the Motion is denied as

---

[1] The Petition originally named Pamela Bondi, for whom the Government substituted Blanche pursuant to Fed. R. Civ. P. 25(d).

moot.

## I.    BACKGROUND

Kumar is a native and citizen of India.  (ECF No. 1 at 5.)  He first entered the United States on or about October 31, 2018, after fleeing his native country to avoid persecution.  (*Id.*)  At that time, he was detained by ICE near Calexico, California, close to the border.  (*Id.*)  Kumar was issued a Notice to Appear on November 21, 2018, after an asylum officer determined that he faced a credible fear of persecution.  (*Id.*)  An Immigration Judge ("IJ") also later determined that he was not a flight risk nor a danger to the community, and ordered Kumar released on a $23,000 bond.  (*Id.*)  Kumar was released from ICE custody on December 26, 2018, after posting bond.  (ECF No. 1 at 6.)

After his release, Kumar timely filed an asylum application in immigration court in Sacramento, California.  (*Id.*)  He also later obtained work authorization.  (*Id.*)  Since then, Kumar has been an active member of the community.  (*Id.*)  Prior to his arrest, he worked as a truck driver and paid taxes for more than five years.  (*Id.*)  And, he has no criminal history.  (*Id.* at 7.)

On January 11, 2024, an IJ ordered Kumar removed.  (*Id.* at 6.)  He was placed on an order of supervision ("OSUP") the following month.  (*Id.*)  In the more than two years since his OSUP was issued, Kumar has fully complied with ICE's supervision and conditions without any violations.  (*Id.*)

Nevertheless, in February 2026, officers from the Laramie County Sherriff's Office stopped Kumar at a bypass weigh station near Cheyenne, Wyoming while he was driving a semi-truck.  (*Id.*)  After showing the officers his identification documents,

the officers arrested Kumar and placed him in ICE custody for not supplying proof of U.S. citizenship.  (*Id.*)  He has remained in detention at the Denver Contract Detention Facility since that date.  (*Id.*)

As of the time the Petition was filed, DHS had not provided Kumar with a bond hearing or an informal interview, explained what change in circumstances led to his detention, or indicated whether he will be removed soon.  (*Id.* at 6–7.)  He also had not been asked to provide any information, sign any documents, or take any other action to facilitate the process of obtaining travel documents from India.  (*Id.* at 7.)  On the same day the Petition was filed, however, ICE served with Kumar with a "Notice of Custody of File Review," advising him "that ICE will review his custody status and potential for release on an order of supervision."  (ECF No. 10-1 at 4.)  Respondents further state that "DHS and the U.S. Department of State are working in coordination to evaluate and select a third country for Petitioner's removal."  (*Id.*)

Kumar now asserts a litany of claims challenging the legality of his detention and, relatedly, the revocation of his OSUP.  (*See generally* ECF No. 1.)

## II.    LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).  More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases."  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws...of the United States")).  "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255

proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

### III.    ANALYSIS

### A.    Revocation of OSUP

Kumar first asserts that his re-detention and Respondents' purported revocation of his OSUP violates his substantive and procedural due process rights, the INA and its implementing regulations, and the Administrative Procedure Act ("APA"), and further constitutes ultra vires agency action.  (ECF No. 1 at ¶¶ 64–94.)  For these alleged violations, Kumar asks the Court to order his immediate release from custody under reasonable conditions of supervision.  (*Id.* at 29.)

"[T]he release and revocation of release of noncitizens subject to a final order of removal" is governed by 8 C.F.R. §§ 241.4 and 241.13.  *Virachak v. Baltazar,* 2026 WL 746285, at *2 (D. Colo. Mar. 17, 2026).  The regulations differ inasmuch as § 241.13 sets out "[a]dditional special review procedures" applicable to "noncitizens who 'are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period' when the noncitizen provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.* at *3 (quoting 8 C.F.R. § 241.13(a)).  At bottom, however, "[b]oth regulations were intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release.'"  *Virachak,* 2026 WL

746285, at *2 (quoting *Santamaria Orellana v. Baker,* 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).

Kumar appeared to argue in the Petition that any revocation of his supervised release was subject to the requirements of 8 C.F.R. § 241.13.  (ECF No. 1 at ¶¶ 48–50.) After the Government submitted in its response that Kumar's release "was revoked pursuant to 8 C.F.R. § 241.4(l)(2)," (ECF No. 10 at 8), however, Kumar cited 8 C.F.R. § 241.4(l) as "[t]he regulation that governs revocation of Mr. Kumar's supervision" in his reply, (ECF No. 13 at 9).  The Court can thus safely conclude that he was, at a minimum, entitled to observance of the revocation procedures set forth in 8 C.F.R. § 241.4(l).[2]

Under § 241.4(l), "[t]he Executive Associate Commissioner" or "[a] district director" possess the authority to "revoke release" of a noncitizen "previously approved for release" when, "in the opinion of the revoking official: (i) [t]he purposes of release have been served; (ii) the alien violates any condition of release; (iii) [i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) [t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate."  8 C.F.R. § 241.4(l)(2).  "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release or parole."  *Id.* § 241.4(l)(1). Moreover, "[t]he [noncitizen] will be afforded an initial informal interview promptly after his or her return to . . . custody to afford the [noncitizen] an opportunity to respond to the

---

[2] Kumar's apparent confusion as to whether his supervised release was revoked pursuant to § 241.4 or § 241.13 in and of itself "reflects a constitutional flaw with the revocation and re-detention here."  *Izquierdo Navarro v. Bondi,* 2026 WL 468582, at *2 (D. Colo. Feb. 18, 2026).

reasons for revocation stated in the notification."  *Id.*

The record before the Court confirms that Respondents failed to adhere to these procedures in revoking Kumar's OSUP.  For one, Kumar is correct that there is no indication here that the decision to revoke his supervised release was made by the Executive Associate Commissioner or, if appropriate, a district director.  (ECF No. 13 at 10.)  Rather, the declaration of Kumar's deportation officer suggests that "Petitioner's release on supervision was terminated" when "officers with the Laramie County Sheriff's Office encountered Petitioner" during a vehicle stop, determined he was subject to a final order of removal, and arrested and "detained him to effectuate his removal from the United States."  (ECF No. 10-1 at ¶¶ 15–16.)  Kumar's deportation officer further submits that "officers are qualified to perform the functions of an immigration officer in relation to the investigation, apprehension, and detention of aliens in the United States pursuant to 8 U.S.C. § 1357(g)."  (*Id.* at ¶ 15.)  But § 1357(g) lends no support whatsoever to the conclusion that Wyoming state police officers are authorized to make supervised release revocation decisions for purposes of § 241.4(l)(2).  *Cf. Izquierdo Navarro,* 2026 WL 468582, at *2 (concluding petitioner's due process rights were violated where, among other reasons, there was no evidence "the revocation decision was made by a properly authorized official").

Second, the Court is unconvinced that Kumar has received the requisite notice and informal interview.  The Government submits that ICE served Kumar with a Notice of File Custody Review on March 26, 2026 ("Notice") which "advised him that ICE will review his custody status and potential for release on an order of supervision," "advised [him] of some of the criteria that ICE will consider when deciding whether to release or

continue to detain him," and "advised [him] that he can submit documents in support of his release." (ECF No. 10-1 at 4 ¶ 20.) The Court is unpersuaded, however, that this Notice served upon Petitioner one month after he was re-detained—and, curiously, on the very same day the Petition was filed—satisfies § 241.4(l)(1)'s requirements. The Government provides no indication that the Notice set forth "the reasons for revocation of his. . . release or parole." 8 C.F.R. § 241.4(l)(1). Nor does it appear the Notice conveyed any intent to provide Kumar with the "informal interview" prescribed by § 241.1(l)(1). *Id.*

To the contrary, the description provided by Kumar's deportation officer contemplates a custody review process taking place entirely outside of Kumar's presence. (*See* ECF No. 10-1 at 4 ¶ 20.) The Notice is thus deficient. *Cf. Virachak,* 2026 WL 746285, at *4 (finding similar notice provided to petitioner failed to comport with regulations where it did not provide any information about the reasons petitioner's supervised release was revoked or indicate whether petitioner would be afforded an informal interview).

The Government argues these deviations from the regulatory procedures are no matter, because due process only requires that Kumar receive notice and an opportunity to be heard. (ECF No. 10 at 8–9.) Moreover, they argue that even if a due process violation has occurred, Kumar has not shown he was prejudiced by the violation and the appropriate remedy is, at most, "additional process—not immediate release." (*Id.* at 10.)

The Court rejects all of these arguments. "[C]ourts across the country routinely hold that (1) ICE violating its own regulations in detaining an individual is a due process

violation, and (2) this violation makes the detention unlawful and the proper remedy is release." *Izquierdo Navarro,* 2026 WL 468582, at *3 (collecting cases); *see also Virachak,* 2026 WL 746285, at (finding Respondents' failure to following the regulations outlined in § 241.4(l) resulted in a due process violation and ordering immediate release).  Moreover, Kumar has surely been prejudiced by Respondents' two-month long failure to adhere to their own procedures, which has in turn "deprived [Kumar] of the opportunity to challenge the reasons for his detention"—to say nothing of the deprivation of his liberty during that time period.  *Virachak,* 2026 WL 746285, at *3; *see also Nguyen v. Archambeault,* 2025 WL 3250922, at *1 (D. Ariz. Nov. 21, 2025) ("Respondents' failure to comply with the governing regulation is prejudicial in that, if the regulation had been followed, Petitioner would have had a meaningful timely opportunity to no longer be detained.").

For these reasons, the Petition is granted to the extent Kumar asserts a procedural due process violation based on Respondents' failure to adhere to the required processes in revoking his OSUP.  On these facts, the Court finds that the appropriate remedy for this type of serious constitutional injury is immediate release.  As a result, the Court need not reach Kumar's additional claims challenging his unlawful re-detention and the revocation of his OSUP.

**B.    Third Country Removal**

The Court also understood Kumar to assert claims in the Petition challenging Respondents' stated intent to remove him to a third country under the Fifth and Eighth Amendments, the INA, the CAT, and applicable implementing regulations.  (ECF No. 1 at ¶¶ 95–104.)  For these alleged violations, he asked the Court to "[o]rder Respondents

not to remove [him] to any country other than India as it was the only country previously designated by the IJ during removal proceedings held under 8 U.S.C. §1229a."  (ECF No. 1 at 29.)

In his reply, however, Kumar clarifies that he "is not seeking through this Petition to prevent his removal to a safe third country that will accept him."  (ECF No. 13 at 3.)  Thus, it is now unclear to the Court what, if any, relief Kumar seeks relating to Respondents' efforts to identify a third country for his removal.  In any event, the Court has already entered an Order enjoining Respondents "from removing, transferring, or causing to remove or transfer, Petitioner from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order."  (ECF No. 6.)  This injunction has substantially the same effect as the relief Kumar originally sought in the Petition.

Accordingly, the Court also declines to reach the merits of "Count 6" and "Count 7" of the Petition.

## IV.    CONCLUSION

For all these reasons, the Court ORDERS as follows:

1.    The Court's Order to Show Cause (ECF No. 6) is MADE ABSOLUTE and Kumar's Petition (ECF No. 1) is GRANTED;

2.    The Court GRANTS this relief to Petitioner pursuant to "Count Two" of the Petition.  The Court does not reach the merits of the other claims set forth in the Petition;

3.    The Motion (ECF No. 2) is DENIED AS MOOT;

4.    **By no later than this Saturday, April 25, 2026**, the Respondents shall

9

IMMEDIATELY RELEASE Kumar, along with all his personal belongings, subject only to the conditions of his pre-existing OSUP. **No additional conditions of release shall be imposed on Kumar by Respondents;**

5.      Respondents shall also continue to be ENJOINED from removing or transferring, or causing to remove or transfer, Kumar from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6.      Should Kumar believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **May 21, 2026**.  The Government shall file a response by no later than **June 11, 2026**, and Kumar shall file a reply by no later than **June 25, 2026**; and

7.      Judgment shall enter in Kumar's favor and against the Government on **May 7, 2026,** UNLESS prior thereto the Court is informed that the Government has failed to fully and timely comply with the terms of this Order.

Dated this 24th day of April, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge